THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ADAM MICHAEL THOMPSON,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S [35] MOTION FOR COMPASSIONATE RELEASE PURSUANT TO § 3582(c)(1)(A)(i)<br><br>Case No. 2:20-cr-00231-DBB<br><br>District Judge David Barlow |

This matter is before the court on Defendant Adam Michael Thompson's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).[1] Mr. Thompson cites threats of retaliation for his public renunciation of his gang membership—in reliance on the Bureau of Prison's erroneously calculated release date—as cause for his request.[2] The United States filed an opposition[3] to Mr. Thompson's motion. For the reasons that follow, the court DENIES Mr. Thompson's motion.

BACKGROUND

Mr. Thompson is a 29-year-old father.[4] Before his arrest and subsequent incarceration in April 2020, Mr. Thompson was employed full-time as a laborer for a series of construction companies.[5] His adult criminal record is comprised of multiple misdemeanor convictions, two

---

[1] Mot. for Compassionate Release, ECF No. 35, filed Mar. 17, 2023.
[2] *Id.* at 1.
[3] Opp'n, ECF No. 38, filed Mar. 29, 2023.
[4] Presentence Investigation Report in Case No. 2:20-cr-00231, ECF No. 39-1 at 2, 11–12 (sealed) [hereinafter PSI Report Felon in Possession].
[5] *Id.* at 14.

1

felony convictions for weapons offenses, and a felony conviction for Escape.[6] He has a history of substance abuse and gang involvement with the La Primera Sureños gang.[7]

As is relevant here, on May 1, 2020, Sandy City police officers conducted a traffic stop on a vehicle driven by Mr. Thompson.[8] The officers located a loaded 9mm handgun in the center console.[9] Mr. Thompson, who was on parole for a weapons offense, was arrested and charged with Felon in Possession of a Firearm and Ammunition.[10] He pleaded guilty to the one-count indictment on April 20, 2021.[11] Pursuant to a written plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C), Mr. Thompson was sentenced to 30 months imprisonment, to run concurrent with his pending state parole violation, on July 6, 2021.[12] This sentence was seven months below the low end of the guideline range.[13] Mr. Thompson was incarcerated at FCI Phoenix in Arizona.[14]

When the Bureau of Prisons ("BOP") calculated Mr. Thompson's sentence, it erroneously gave Mr. Thompson credit for the time he served in custody prior to his sentencing.[15] This error resulted in a Good Conduct release date of June 18, 2022—less than 12 months from the date his sentence was imposed.[16] In anticipation of that release date, the BOP transferred Mr. Thompson to Geo Care Residential Reentry Center in Salt Lake City on March 3, 2022.[17] Around this time, Mr. Thompson told his mother that he "could not do this anymore"

---

[6] Presentence Investigation Report in Case No. 2:22-cr-00152, ECF No. 39-2 at 6–10 (sealed) [hereinafter PSI Report Escape].
[7] *Id.* at 1, 12; Mot. for Compassionate Release 1–5.
[8] PSI Report Felon in Possession 4.
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.* at 14.
[13] First Step Act Relief Eligibility Report, ECF No. 41 at 3 (sealed).
[14] PSI Report Escape 4.
[15] Mot. for Compassionate Release 2; Opp'n 7.
[16] PSI Report Escape 4.
[17] *Id.*

and was renouncing his gang affiliation.[18] While at the reentry center, he tested positive for drug use, and the reentry center staff threatened to send him back to prison.[19] In response, on April 3, 2022, Mr. Thompson jumped over the back courtyard fence of the reentry center without authorization.[20] He did not return.

Instead, after a short time staying with his girlfriend and their two children, he moved in with his brother in Ogden, Utah.[21] Mr. Thompson states that he worked for a landscaping company, stayed away from drugs, and was not charged with any new crimes during the period following his escape and before his arrest.[22]

On April 27, 2022, Mr. Thompson was charged in a one count Indictment with Escape, in violation of 18 U.S.C. § 751(a).[23] He was arrested on July 6, 2022[24] and pleaded guilty to the charge on August 9, 2022.[25] In exchange for his guilty plea, the United States recommended that he be sentenced at the low end of the sentencing guideline range (12 months), that the Escape sentence run concurrent to any time remaining on his sentence from his conviction for Felon in Possession, that he be given credit for his time in custody since his arrest,[26] and that he serve the last six months of his sentence on home confinement.[27] Based on this agreement, Mr. Thompson avers that he expected to be released in early 2023.

---

[18] First Step Act Relief Eligibility Report 4–5.
[19] Mot. for Compassionate Release 2.
[20] PSI Report Escape 4.
[21] *Id.* at 13.
[22] Mot. for Compassionate Release 3.
[23] *Id.* at 4.
[24] *Id.* at 3.
[25] PSI Report Escape 4. Sentencing is currently scheduled for May 10, 2023. *USA v. Thompson*, Case No. 2:22-cr-00152-RJS-JCB (D. Utah Mar. 20, 2023), ECF No. 30.
[26] PSI Report Escape 15.
[27] Mot. for Compassionate Release 3.

Pending sentencing on the Escape charge, the BOP transferred Mr. Thompson to the detention center in Pahrump, Nevada.[28] While detained in Pahrump, Mr. Thompson states that he told a Sureños gang member that he was out of the gang.[29] Mr. Thompson had decided to make his resignation public in reliance on his (presumed) early 2023 release date.[30] Mr. Thompson reports that the news spread among Sureños gang members at the detention center, and they threatened to fight Mr. Thompson and to harm him.[31] Mr. Thompson told an officer, and detention center staff moved him to a maximum security section.[32] He was not harmed while at the detention center.[33] Mr. Thompson was subsequently transferred to Utah in anticipation of his sentencing on the Escape case.[34]

Sometime thereafter, BOP staff recalculated his release date and discovered the initial error in Mr. Thompson's release date.[35] In late December 2022, BOP staff informed Mr. Thompson's counsel that Mr. Thompson would not be released until March 2024 due to the initial error in the sentence calculation for his Felon in Possession conviction.[36]

As of March 31, 2023, Mr. Thompson has served 59.5% of the 30-month sentence for the Felon in Possession conviction.[37] The BOP Public Information Inmate Data Report indicates that Mr. Thompson has an anticipated Good Conduct release date of March 6, 2024, and he is eligible for home detention on December 7, 2023.[38]

---

[28] *Id*. at 3.
[29] *Id.*
[30] *Id.* at 4.
[31] *Id.* at 4.
[32] *Id.*
[33] *Id.*
[34] *Id.*
[35] *Id.*
[36] *Id.*
[37] First Step Act Relief Eligibility Report 3.
[38] *Id.*

Despite Mr. Thompson's affiliation with the Sureños gang while at FCI Phoenix,[39] he only had one disciplinary infraction during his roughly nine months there: refusing to obey an order on February 11, 2022.[40] While at the reentry center, he received two of the most severe disciplinary infractions for use of drugs/alcohol on March 20, 2022 and Escape on April 3, 2022.[41]

Mr. Thompson filed his Motion for Compassionate Release on March 17, 2023, asking the court to grant him early release due to the danger posed by returning him to federal prison following his renunciation of his gang membership.[42] His release plan is to reside with his brother in Utah.[43] His brother has procured Mr. Thompson a job at the concrete plant where his brother works.[44] The Probation Office has been unable to verify this release plan.[45] The United States filed a response in opposition.[46]

## DISCUSSION

I.  **Mr. Thompson Is Not Entitled to Relief Under 18 U.S.C. § 3582(c)(1)(A)(i) Because He Has Not Shown Extraordinary and Compelling Circumstances Warranting a Sentence Reduction.**

"Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed, but th[at] rule of finality is subject to a few narrow exceptions."[47] "One such exception is contained in § 3582(c)(1)."[48] This subsection "authorize[s] the Director of the

---

[39] Mot. for Compassionate Release 2.
[40] First Step Act Relief Eligibility Report 5.
[41] *Id.*
[42] Mot. for Compassionate Release 1.
[43] *Id.* at 5.
[44] *Id.*
[45] First Step Act Relief Eligibility Report 5.
[46] ECF No. 38.
[47] *United States v. Maumau*, 993 F.3d 821, 830 (10th Cir. 2021) (quoting *Freeman v. United States*, 564 U.S. 522, 526 (2011)) (alteration in original).
[48] *Id.*

BOP to move for a reduction in a defendant's sentence."[49] And, since the passage of the First Step Act in 2018, it also allows "a defendant to directly file a motion for compassionate release with the district court after [] exhausting administrative rights . . . ."[50] In this case, the United States does not dispute that Mr. Thompson meets the exhaustion requirement.

"[A] district court may . . . grant a motion for reduction of sentence . . . only if three requirements are met: (1) the district court finds that extraordinary and compelling reasons warrant such a reduction; (2) the district court finds that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and (3) the district court considers the factors set forth in § 3553(a), to the extent that they are applicable."[51] "[D]istrict courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others."[52]

Concerning the first requirement, "Congress intended to afford district courts with discretion . . . to independently determine the existence of 'extraordinary and compelling reasons.'"[53] "As the movant, [the] defendant bears the burden of establishing that he is eligible for the requested sentence reduction."[54]

In this case, Mr. Thompson argues that his circumstances are extraordinary and compelling due to: (1) his rehabilitation as evidenced by his resignation from the Sureños gang, (2) his public renunciation of his gang membership in reliance on his erroneously calculated

---

[49] *Id.*
[50] *Id.*
[51] *Id.* at 831.
[52] *United States v. McGee*, 992 F.3d 1035, 1043 (10th Cir. 2021) (quoting *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021)).
[53] *Id.* at 1044.
[54] *United States v. London*, 2021 WL 794456, at *2 (D. Utah 2021).

2023 release date and the resultant threats of violence he reports, and (3) the time Mr. Thompson spent in custody before he was sentenced in this Felon in Possession case.[55]

The Government disagrees, contending that "[c]onsidered on their own or taken together, [Mr.] Thompson's proffered reasons for reducing his sentence are neither extraordinary nor compelling"[56] because (1) Mr. Thompson's desire to put his gang affiliation behind him is insufficient and potentially unreliable, (2) Mr. Thompson has not provided any details or corroborating evidence of the threats he faces from gang members, (3) after receiving the threats in Pahrump, Mr. Thompson notified corrections staff and was moved to another section of the facility where he apparently was not harmed, (4) Mr. Thompson has not contended that he faced any threats of violence in his current detention facility, (5) the BOP's miscalculation is not extraordinary or compelling under persuasive case law, and (6) the more than 30 months Mr. Thompson has spent in custody is justified, considering his Escape conviction and state parole violation.[57]

The court addresses each of Mr. Thompson's arguments in turn and then evaluates them collectively.

First, Mr. Thompson's "rehabilitation," as evidenced by his private and public renunciation of his gang affiliation, does not weigh in favor of finding extraordinary and compelling circumstances. To begin, generally "[r]ehabilitation of the defendant alone, . . . shall not be considered an extraordinary and compelling reason."[58] Courts in this Circuit have found rehabilitation efforts weigh in favor of finding extraordinary and compelling circumstances when a defendant overcomes an addiction, has not had any write-ups over nine years of incarceration,

---

[55] Mot. for Compassionate Release 7.
[56] Opp'n 4.
[57] *Id.* at 4–8.
[58] *McGee*, 992 F.3d at 1043 (quoting 28 U.S.C. § 994(t)).

has been stably employed, and has completed educational courses,[59] while a defendant who has completed educational courses, has been stably employed, but has several recent disciplinary infractions does not.[60] Here, Mr. Thompson's record while incarcerated does not provide sufficient evidence of rehabilitation. Mr. Thompson acquired three disciplinary infractions during his incarceration, one of which resulted in another federal conviction. Mr. Thompson has offered no evidence that he is abstaining from drugs other than his own averments; in fact, the latest drug test for which the court has evidence occurred in March 2022 and Mr. Thompson tested positive for drug use.[61] Further, Mr. Thompson did not attend any educational courses, drug courses, and he was not employed while in the custody of the BOP.[62] While Mr. Thompson shares that he has renounced his gang affiliation[63]—for which the court commends him—this is not enough to support an "extraordinary and compelling" finding.[64]

Next, the threats of violence resulting from Mr. Thompson's decision to publicly renounce his gang affiliation also do not weigh in favor of finding extraordinary and compelling circumstances. First, Mr. Thompson only alleged that he received threats while in detention in Pahrump. He does not allege any facts that would enable the inference that he will be threatened

---

[59] *United States v. Avalos*, 2021 WL 3617420, at *4 (D. Utah 2021); *see United States v. Jenkins*, 460 F. Supp. 3d 1121, 1124 (D. Colo. 2020) (finding defendant's rehabilitation efforts weighed in favor of finding extraordinary and compelling circumstances when he had only one disciplinary infraction in his first year of incarceration and no others in the following 20 years, he had participated in a wide variety of courses, and three supervisors who had witnessed his performance over at least fifteen years wrote that he was a model inmate); *see also United States v. Eccleston*, 543 F. Supp. 3d 1092, 1140 (D.N.M. 2021).
[60] *United States v. Cameron*, 2022 WL 123569, at *3 (D. Utah 2022).
[61] PSI Report Escape 14.
[62] *Id.* at 11.
[63] In its recommendation to the court, the probation office highlighted the concern that Mr. Thompson renounced his gang affiliation to his mother before being transferred to the reentry center, at which he openly associated with other gang members. This calls into question his commitment to his resignation.
[64] The court also notes the difficulty with finding a defendant's purported gang resignation—as evidenced by his self-reported statement to another gang member and comment to his mother—sufficient to weigh in favor of finding extraordinary and compelling circumstances. These are simply statements devoid of supporting evidence or of subsequent action that would corroborate a defendant's dedication to leaving a gang.

8

at any federal facility, or any other facility, where he might be housed. Additionally, Mr. Thompson did not provide any evidence that the BOP cannot adequately respond to these threats in order to protect Mr. Thompson. Indeed, Mr. Thompson informed the court that the BOP staff at the Pahrump detention center took actions that kept Mr. Thompson safe after he reported the threats to his physical safety. Finally, Mr. Thompson does not explain how his release would result in his increased safety. For these reasons, the court does not find that this evidence weighs in favor of an "extraordinary and compelling" finding.

Lastly, the BOP's error in calculating Mr. Thompson's sentence for his Felon in Possession conviction does not weigh in favor of finding extraordinary and compelling circumstances. The BOP's error has not resulted in Mr. Thompson serving additional time, and Mr. Thompson acknowledges that "it is not extraordinary that he is being required to serve the sentence imposed."[65] However, Mr. Thompson contends that "it is extraordinary that Mr. Thompson has already served more than 30 months in prison from the time of his arrest."[66] But Mr. Thompson entered into the Rule 11(c)(1)(C) plea agreement represented by counsel and knowing that his plea agreement did not include a provision that his previous time in custody would be credited against the agreed 30-month sentence.[67] A reasonable plea agreement cannot be made an extraordinary and compelling circumstance warranting a reduction in sentence when the circumstances—Mr. Thompson's pre-sentence incarceration—existed at the time he assented to the plea agreement.

Considering Mr. Thompson's arguments cumulatively, the court cannot find extraordinary and compelling circumstances that warrant a reduction. Even though Mr.

---

[65] Mot. for Compassionate Release 4.
[66] *Id.* at 7.
[67] *See* ECF No. 23 (Statement in Advance of Plea), filed April 20, 2021.

Thompson states that he relied on the BOP's miscalculation when he made his decision to publicly renounce his gang affiliation, Mr. Thompson has not shown any evidence that supports his contention that he will not be safe in a federal facility. Indeed, the evidence appears to contradict his argument: when Mr. Thompson alerted BOP staff to the threat he received from gang members in Pahrump, BOP staff acted to protect him and kept him safe. Mr. Thompson's conduct while at the reentry center—using drugs and escaping—also contradicts Mr. Thompson's contention that he relinquished his affiliation as a desire to "change for good."

Having failed to find any extraordinary and compelling reasons for a sentence reduction, the court need not address the second or third requirement of § 3582(c)(1)(A).[68] Mr. Thompson is not entitled to relief under § 3582(c)(1)(A)(i).

In the alternative, Mr. Thompson requests that the court direct the BOP to place Mr. Thompson in home confinement. In support, he points to 18 U.S.C. § 3582(c)(1)(A), which "allows a court to 'impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment.'"[69] Once the court converts the remainder of Mr. Thompson's sentence, he contends, the court could add conditions such as "location monitoring, home detention, halfway house, or community service."[70]

But this argument is not an alternative argument. The court "may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) . . . if it finds that . . . *extraordinary and compelling reasons* warrant such a reduction; or the defendant

---

[68] *McGee*, 992 F.3d at 1043 (quoting *Elias*, 984 F.3d at 519).
[69] Mot. for Compassionate Release 8-9 (quoting 18 U.S.C. § 3582(c)(1)(A)).
[70] *Id.* at 9.

is at least 70 years of age . . . ."[71] Because the court has not found extraordinary and compelling reasons, the remainder of the argument is moot.

## CONCLUSION

For the foregoing reasons, Mr. Thompson's Motion for Compassionate Release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A), is DENIED.

Signed May 1, 2023.

BY THE COURT

David Barlow
United States District Judge

---

[71] 18 U.S.C. § 3582(c)(1)(A) (emphasis added).

11